Filed 5/8/25  P. v. Wallace CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C101017 |
| Plaintiff and Respondent, | (Super. Ct. No. 95F02739) |
| v. | |
| JILES LEE WALLACE, | |
| Defendant and Appellant. | |

In 1997, the trial court found defendant Jiles Lee Wallace guilty of first degree murder, attempted robbery, and burglary and found true two felony murder special circumstances allegations and three firearm use enhancement allegations.  In 2019, defendant filed a petition to vacate his murder conviction pursuant to what is now Penal Code section 1172.6.[1]  The trial court held an evidentiary hearing on defendant's petition

---

[1] Undesignated statutory references are to the Penal Code.

1

and found beyond a reasonable doubt that defendant remained guilty of murder under two still-valid theories of liability. Defendant appeals, arguing the court's findings are not supported by substantial evidence.

We conclude substantial evidence supports the trial court's finding that defendant was a major participant in the underlying felonies during which the killing was committed and acted with reckless indifference to human life. Accordingly, we need not address whether substantial evidence supports the court's finding that defendant aided and abetted implied malice murder. We affirm the order denying defendant's petition.

**FACTUAL AND PROCEDURAL HISTORY**

We recite the underlying facts based on the evidence introduced at the section 1172.6, subdivision (d) hearing, which consisted of the transcripts from defendant's trial, viewed " ' " 'in the light most favorable to the judgment below.' " ' " (*People v. Reyes* (2023) 14 Cal.5th 981, 988; *People v. Vargas* (2022) 84 Cal.App.5th 943, 951.)[2]

In November 1994, Larry Freeman accused Billy Stack of stealing his car stereo. Stack denied it, and an argument broke out. Stack told Freeman to leave his apartment, and Freeman said he was going to come back and kill Stack if he didn't get his stereo back. Freeman left but then returned sometime around 1:00 a.m. to 3:00 a.m. with another man. Stack opened the door, and the other man asked Freeman if he was the right guy. Freeman said yes, and the other man shot Stack once in the leg with a handgun.

---

[2] At the evidentiary hearing in the trial court, the People submitted the record from defendant's direct appeal, *People v. Wallace* (Dec. 21, 1998, C027310) (nonpub. opn.). The parties refer to this evidence in their briefing but have not included it in the record on appeal. On our own motion, we incorporate by reference the record in case No. C027310.

Three days later, Freeman met with Christopher Dupree and Albert Rhine. Freeman told them that Stack was threatening his mother in retaliation for shooting Stack in the leg. Freeman wanted Stack taken care of before he contacted Freeman's mother, and Dupree said that he would handle it. Freeman then set up a meeting with defendant, and the three men drove to defendant's apartment. Defendant was not home when they arrived but returned shortly thereafter. Freeman told defendant that Stack was messing with his mom and he wanted to go over and do something about it. Defendant then went into a bedroom with Freeman to get guns. When they came out, Freeman had one gun and defendant had two.

Freeman asked Rhine and defendant to back him up when he and Dupree went to take care of Stack. Freeman promised them the contents of a safe he had stored at Stack's apartment, including drugs and possibly money, for their assistance. Defendant stated that, if the group was going in, he was getting something out of it, like a television or a VCR. The group, which now included Shawn Shorter, went and borrowed two cars, so that Freeman's car would not be seen at Stack's apartment. The five men then drove both cars to Stack's apartment sometime around 3:00 a.m. Stack lived with his girlfriend, his girlfriend's six-month-old daughter, and his girlfriend's brother, Scott Lewis. Unbeknownst to the group, Stack, their target, was not at home that night.

The five men parked down the street from the apartment. As they walked over to the apartment, Dupree had Freeman's gun, defendant had one of his guns, and Rhine had the other gun. Shorter argued that he should have a gun, so Rhine passed his to Shorter. When they reached the apartment, Freeman told the group to let Dupree handle it and not to hurt Lewis. Freeman stayed at the bottom of the stairs while the other four ascended and entered the apartment.

When the four men entered, Lewis jumped up off the couch and said, "Oh, my God." Defendant, gun in hand and wearing a ski mask, told Lewis to get down on the ground and everything would be all right. Shorter held Lewis at gun point, while

3

defendant and Rhine began to search for the safe.  In the first bedroom, defendant and Rhine found Stack's girlfriend (Lewis's sister), sleeping in bed with her infant daughter.  Either defendant or Rhine pointed a gun at Lewis's sister and defendant asked, "Bitch, where's the safe?"  She responded, "I don't know about no safe."  Rhine searched the closet and found no safe.

Defendant and Rhine then went to the second bedroom, where they each looked in one of the two closets.  While they were tearing up the closets searching for the safe, they heard three gunshots.  Rhine and defendant headed quickly back to the front room, where Lewis was collapsing between the couch and a table.  Dupree was running down the stairs outside with Freeman's gun in his hand.  Lewis reached out and touched Rhine's arm.  Then defendant ran by, grabbed Rhine's shoulder, and said, "Let's go."

The five men ran back to the cars.  When they reached the cars, Freeman took his gun back and berated Dupree for shooting Lewis.  Defendant had to push one of the cars to get it started, and the group then drove back to defendant's apartment.  Freeman, Dupree, and Rhine then returned the borrowed cars and returned to Freeman's apartment.  Sheriff's deputies and paramedics responded to a 9-1-1 call and found Lewis had died from multiple gunshot wounds.

The People charged defendant with murder, attempted robbery, and burglary, and alleged that he used a firearm in the commission of all three offenses and committed the murder while engaged in the commission of the other two offenses.  He waived his right to a jury trial, and the trial court found him guilty of all three offenses and found all the special circumstances and firearm use allegations true.

The trial court initially sentenced defendant to life in prison without the possibility of parole for murder, plus four years in prison for the attached firearm use enhancement, a concurrent term for attempted robbery, and a stayed term for burglary.  In 2016, following the United States Supreme Court's decision in *Miller v. Alabama* (2012) 567 U.S. 460 and our Supreme Court's decision in *People v. Gutierrez* (2014) 58 Cal.4th

4

1354, defendant filed a petition for resentencing and a petition for a writ of habeas corpus. The trial court recalled defendant's sentence and resentenced him to 25 years to life in prison for murder, plus four years in prison for the firearm use enhancement, a concurrent term for attempted robbery, and a stayed term for burglary.

In 2019, defendant filed a petition to vacate his murder conviction pursuant to what is now section 1172.6. The trial court denied the petition, finding defendant failed to make a prima facie showing that he was eligible for relief. On appeal, this court initially affirmed, but the Supreme Court granted review and in November 2022 transferred the case back to us to vacate our previous decision and reconsider the matter in light of *People v. Strong* (2022) 13 Cal.5th 698. On transfer, this court vacated the trial court's denial and remanded for further proceedings. The trial court then held an evidentiary hearing pursuant to section 1172.6, subdivision (d).

The People submitted the record of defendant's trial to prove beyond a reasonable doubt that defendant was guilty of murder under current law. The People argued defendant was guilty under two alternative theories: (1) felony murder as a major participant in the attempted robbery and burglary who acted with reckless indifference to human life; and (2) aiding and abetting implied malice murder. Defendant argued the evidence did not support guilt beyond a reasonable doubt under either theory, and emphasized that defendant did not adequately appreciate the risk of death because he was not yet 18 years old at the time of the murder. Defendant did not offer any additional evidence at the hearing.

The trial court found defendant guilty beyond a reasonable doubt under both theories of murder liability. The court found defendant was a major participant in the attempted robbery because he agreed to participate in the attack on Stack if he got something in return; he supplied the weapons for the group; he entered the apartment and bedrooms with a gun and asked Stack's girlfriend, "bitch, where's the safe?"; and he facilitated the group's getaway. The court found defendant acted with reckless

5

indifference to human life because he knew that his group intended violence against Stack as revenge; knew that Freeman had already induced someone to shoot Stack in the leg; provided guns to the group; either he or one of his confederates pointed a gun at a woman and an infant in the apartment; he made no effort to help the victim and stopped a confederate from helping the victim, telling him, "let's go"; and he helped push one of the cars to get it started, facilitating the getaway. The court also found beyond a reasonable doubt that defendant aided and abetted the implied malice murder of Lewis. Accordingly, the court found the People had met their burden of proof beyond a reasonable doubt and denied defendant's section 1172.6 petition.

Defendant filed a timely notice appealing from the denial of his petition.

## DISCUSSION

Defendant contends the trial court's findings of guilt beyond a reasonable doubt are not supported by substantial evidence. We conclude substantial evidence supports the court's finding that defendant was a major participant in the burglary and attempted robbery during which the killing was committed and acted with reckless indifference to human life. Accordingly, we need not address the second theory of liability.

### I

### *Standard of Review*

"To determine whether sufficient evidence supported these findings, we apply the substantial evidence standard of review." (*People v. Montanez* (2023) 91 Cal.App.5th 245, 270; see *People v. Perez* (2018) 4 Cal.5th 1055, 1066.) "Because the sufficiency of the evidence is ultimately a legal question, we must examine the record independently for ' "substantial evidence—that is, evidence which is reasonable, credible, and of solid value" ' that would support a finding beyond a reasonable doubt." (*People v. Banks* (2015) 61 Cal.4th 788, 804.) We must "review the whole record to determine whether *any* rational trier of fact could have found the essential elements of the crime" beyond a reasonable doubt. (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.) "In

6

applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the [trier of fact] could reasonably have deduced from the evidence.  [Citation.]  'Conflicts and even testimony [that] is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends.' "  (*Ibid.*)  " 'A reversal for insufficient evidence "is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support' " ' " the fact finder's decision.  (*People v. Manibusan* (2013) 58 Cal.4th 40, 87.)

II

*Analysis*

Under section 1172.6, a defendant is ineligible for resentencing if the prosecution proves beyond a reasonable doubt that the defendant "is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019."  (§ 1172.6, subd. (d)(3).)  The current version of section 189 assigns liability  for murder if the person accused "was a major participant in the underlying felony and acted with reckless indifference to human life."  (§ 189, subd. (e)(3).)  The requirements of being a major participant and acting with reckless indifference " 'significantly overlap . . . in general, for the greater the defendant's participation in the felony murder, the more likely that he acted with reckless indifference to human life.' "  (*People v. Clark* (2016) 63 Cal.4th 522, 615 (*Clark*).)

A.  *Major Participant in Robbery and Burglary*

"The ultimate question pertaining to being a major participant is 'whether the defendant's participation "in criminal activities known to carry a grave risk of death" [citation] was sufficiently significant to be considered "major." ' "  (*Clark*, *supra*, 63 Cal.4th at p. 611.)  "Among the relevant factors in determining this question, [are] the following:  'What role did the defendant have in planning the criminal enterprise that led

7

to one or more deaths?  What role did the defendant have in supplying or using lethal weapons?  What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants?  Was the defendant present at the scene of the killing, in a position to facilitate or prevent the actual murder, and did his or her own actions or inaction play a particular role in the death?  What did the defendant do after lethal force was used?' " (*Ibid.*)  "No one of these considerations is necessary, nor is any one of them necessarily sufficient."  (*People v. Banks*, *supra*, 61 Cal.4th at p. 803.)

Here, substantial evidence supports the trial court's finding that defendant was a major participant in the attempted robbery and burglary.  Viewed most favorably to the court's findings, the evidence establishes that defendant obtained three guns for the group, at least two of which were his and one of which he at least had stored for Freeman. The court could infer that defendant knew these guns would be used to "take care" of Stack, knew that Freeman had already directed someone to shoot Stack in the leg, and knew that the conflict had since escalated.  Freeman asked defendant to back him up when he and Dupree went to take care of Stack, and defendant agreed in return for the contents of a safe, including drugs and possibly money.  Defendant participated in borrowing two cars, so that Freeman's car would not be seen at Stack's apartment and rode with the group to Stack's apartment around 3:00 a.m.  When the group arrived at Stack's apartment, defendant stated that, if the group was going in, he was getting something out of it, indicating he knew he would have to obtain any reward for himself. When four of them entered Stack's apartment, defendant, gun in hand and wearing a ski mask over his face, told Lewis to get down on the ground and everything would be all right, in order to facilitate his search for the safe.  Defendant then searched the apartment for the safe, asking Stack's girlfriend, "Bitch, where's the safe?"  The court could infer that Lewis interpreted defendant's question and the ransacking of closets as a threat to his sister, which eventually led to a confrontation that culminated in the shooting.  After

8

Lewis was shot, defendant stopped Rhine from helping the victim before running out of the apartment and back to the cars. When one car would not start, defendant pushed it until it started.

These circumstances amply support the trial court's finding. Defendant was the primary motivating factor in the robbery, which extended the home invasion that otherwise would have ended when the group learned Stack was not home. He provided the guns knowing they were likely to be used to exact revenge against Stack for threatening Freeman's mother and knowing that Freeman had already directed a shooting of Stack. Defendant helped with every aspect of the crime, from holding Lewis at gunpoint to ransacking the apartment, to enabling the getaway. The only factor that cuts against the court's determination is that defendant was in a different room when the shooting happened. Given this extensive evidence of defendant's participation in the robbery and burglary, including making an already volatile situation even more dangerous, we cannot say " ' " 'that upon no hypothesis whatever is there sufficient substantial evidence to support' " ' " the court's finding. (*People v. Manibusan*, *supra*, 58 Cal.4th at p. 87.)

Defendant argues he was merely backup for the planned assault on Stack, but this ignores that defendant was the primary motivating force behind the attempted robbery, which he pursued even though the target of the attack was not present. He also argues he was influenced by Freeman because he was only 17 years old at the time of the murder, but this does not negate the evidence of his extensive participation in the attempted robbery, even with Freeman staying outside the apartment at the bottom of the steps and the absence of Freeman's target (Stack). The trial court is presumed to have considered all relevant circumstances, including defendant's youth, absent evidence to the contrary. Further, the court could have rationally determined that defendant was motivated by his desire to get something out of the home invasion for himself, as opposed to being present

9

only as backup.  Accordingly, we conclude substantial evidence supports the court's finding.

      B.  *Reckless Indifference to Human Life*

"Reckless indifference to human life has a subjective and an objective element." (*In re Scoggins* (2020) 9 Cal.5th 667, 677.)  "As to the subjective element, '[t]he defendant must be aware of and willingly involved in the violent manner in which the particular offense is committed,' and he or she must consciously disregard 'the significant risk of death his or her actions create.' "  (*Ibid.*)  "As to the objective element, ' "[t]he risk [of death] must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him [or her], its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation." ' "  (*Ibid.*)  " 'Awareness of no more than the foreseeable risk of death inherent in any [violent felony] is insufficient' to establish reckless indifference to human life; 'only knowingly creating a "grave risk of death" ' satisfies the statutory requirement."  (*Ibid.*)  "Notably, 'the fact a participant [or planner of] an armed robbery could anticipate lethal force might be used' is not sufficient to establish reckless indifference to human life."  (*Ibid.*)

We analyze the following list of nonexclusive factors in determining whether a defendant acted with reckless indifference to human life:  (1) a defendant's knowledge of weapons, and the use and number of those weapons; (2) a defendant's physical presence at the crime and opportunities to restrain the crime and/or aid the victim; (3) the duration of the felony; (4) a defendant's knowledge of the cohort's likelihood of killing; and (5) a defendant's efforts to minimize the risks of the violence during the felony.  (*Clark*, *supra*, 63 Cal.4th at pp. 618-623.)  No one factor is required or dispositive.  (*Id.* at p. 618.)  Recognizing the overlap between the major participant and reckless indifference elements, our high court has also explained that "the greater the defendant's participation

10

in the felony murder, the more likely that he acted with reckless indifference to human life." (*Id.* at p. 615.)

Here, defendant obtained three guns for the group and used one himself to help hold Lewis at gunpoint. Defendant knew that Freeman had already directed a shooting of the intended target and now the conflict had escalated with threats to Freeman's mother. Thus, defendant must have expected the guns to be used, although against a target other than the victim. As the trial court explained: "He knew an individual in that apartment had already been shot in the leg, so he knew the chances of violence being used with these guns was virtually a certainty, and yet, he went ahead and went along with the entire plan." The attempted robbery and burglary did not last long, but defendant prolonged the period during which Lewis was held at gunpoint by tearing up closets looking for his reward when he could have chosen to end the confrontation once he learned Stack was not home or once he saw Lewis's sister and her infant child were present. Instead, defendant demanded the safe's location from Lewis's sister and then began ransacking the apartment, possibly provoking Lewis to try to protect her. Defendant also had the opportunity to help the victim, but instead he pulled Rhine away and helped the group escape. Defendant did tell Lewis to get on the ground and everything would be all right, but the court could reasonably conclude that this factor did not outweigh the others on which it relied. Defendant's role as a major participant in the attempted robbery also supports the trial court's determination that he acted with reckless indifference to human life.

Defendant contends, citing *In re Moore* (2021) 68 Cal.App.5th 434 and *People v. Ramirez* (2021) 71 Cal.App.5th 970, that his youth at the time of the murder undermines this evidence that he acted with reckless indifference to human life. Defendant raised this argument in the trial court, so he cannot argue the court failed to consider his youth; instead, he contends the court should have given more weight to his youth, which would have rendered the other evidence of defendant's reckless indifference for human life

11

insubstantial. We conclude these cases are distinguishable and fail to undermine the substantial evidence supporting the trial court's finding.

As an initial matter, defendant's contention fails because, "As a reviewing court, our role is not to reweigh the evidence." (*People v. Thomas* (2023) 14 Cal.5th 327, 379.) The appellate courts in *In re Moore* and *Ramirez* did not reverse the trial courts' findings solely because they gave more weight to the defendants' youth, but because the evidence supporting those findings was already so weak that considering youth moved the evidence below the low bar of substantiality. For example, in *Moore*, the defendant did not supply the gun, never left the car, and had no opportunity to prevent his codefendant's sudden, unprovoked shooting of one of the robbery victims in a parking lot full of witnesses. (*In re Moore*, *supra*, 68 Cal.App.5th at pp. 452-453.) The appellate court concluded that, "[e]ven if this evidence supports a finding of reckless indifference for an adult, it is not sufficient to establish that Moore, who was 16 at the time of the shooting, had the requisite mental state." (*Id.* at p. 453.) In *Ramirez*, the 15-year-old defendant did not plan the carjacking, did not supply the gun, had reason to believe violence was unlikely, and had no opportunity to prevent violence when the shooter suddenly began firing. (*Ramirez*, 71 Cal.App.5th at pp. 988-990.) The court explained: "Significantly, Ramirez's youth at the time of the shooting greatly diminishes any inference he acted with reckless disregard for human life by participating in the attempted carjacking knowing [the shooter] was armed." (*Id.* at p. 990.)

In contrast to these two cases, defendant was 17 years old at the time of the murder, provided the guns, and personally prolonged the confrontation in a way that may have provoked the fatal confrontation, even though the intended target was not present. Most significantly, here defendant knew that the plan was to shoot or kill Stack. Defendant knew Freeman had already had Stack shot in the leg for stealing a car stereo and Stack was threatening to retaliate against Freeman's mother. Drawing all inferences in favor of the trial court's ruling, defendant must have known the plan to "take care" of

12

Stack would involve significant violence directed toward ending any threat to Freeman's mother. Given the more substantial evidence in this case, we reject defendant's contention that no rational fact finder could find a 17-year-old would understand that violence was practically certain in this situation.

This case more closely resembles *In re Harper* (2022) 76 Cal.App.5th 450, where the appellate court explained: "The evidence demonstrates petitioner willingly participated in the robbery despite knowing there was a very high risk—if not a certainty—the victim would die. His conduct during the robbery (giving the shotgun to [the shooter] as they entered the store, telling [the accomplice] where she could find knives [which she used to try to slit the victim's throat before the shooting], taking merchandise from the store), and his statements during and after the robbery that reflected his callousness or indifference to whether the victim lived or died, all show he did not act like an immature, naïve, or impulsive adolescent. Therefore, we conclude petitioner's youth at the time of the offense in no way undermines [the conclusion that] the record contains substantial evidence he was a major participant in the robbery and he acted with reckless disregard for human life." (*Id.* at p. 472, see also pp. 454-455.)

Like the court in *In re Harper*, we conclude defendant's youth at the time of the murder does not undermine our conclusion that substantial evidence supports the trial court's finding that defendant acted with reckless indifference to human life.

13

## DISPOSITION

The order denying defendant's section 1172.6 petition is affirmed.

_____/s/_____
Duarte, Acting P. J.

We concur:

_____/s/_____
Feinberg, J.

_____/s/_____
Wiseman, J.*

_____

\* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.